UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH GAIL SHADE,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security<br><br>Defendant. | Case No. 2:21-cv-02256-JDP (SS)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 13 & 17 |

Plaintiff challenges the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability, Disability Insurance Benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 13 & 17. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's is denied, and this matter is remanded for further proceedings.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and if the correct legal standards have been applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed applications for a period of disability, DIB, and SSI on May 2, 2014, alleging disability beginning January 1, 2001. Administrative Record ("AR") 237-52. After her applications were denied initially and upon reconsideration, two hearings were set before an ALJ, but plaintiff did not appear at either hearing. AR 39-60, 147-54, 168-73. On December 18, 2017, the ALJ issued a decision finding that plaintiff was not disabled. AR 19-32. After the appeals council denied plaintiff's request for review, she sought review before the U.S. District Court for the Eastern District of California. AR 5-10, 1038-51. On May 20, 2020, the court found error in the ALJ's findings at step five of the sequential evaluation process and remanded for reconsideration. AR 1086-94.

On remand before a different ALJ, plaintiff appeared and testified at a hearing on December 7, 2020. AR 959-91. The ALJ issued a second unfavorable decision on August 20, 2021. AR 929-58. Specifically, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2001.

2. The claimant has not engaged in substantial gainful activity since January 1, 2001, the alleged onset date.

   * * *

3. The claimant has the following severe impairments: lumbar disc disease status post discectomy, Kienbock's disease, right radial styloidectomy and scapho-capitate intracarpal fusion with distal radius bone graph, status post right finger fracture, anxiety disorder, mood disorder and somatic symptom disorder.

   * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

   * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except walk a total of 2 hours per day, stand a total of 4 hours per day, reaching and push/pull are occasionally; handling, fingering, feeling and use of feet frequently; all postural activities occasionally, except balance frequently and no climbing ladders or scaffolds; unprotected heights never; humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme temperatures, and vibrations occasionally; moving machinery and operating a motor vehicle frequently, noise moderate (office); capable of object-oriented, routine, habituated, work in a moderately complex setting; restricted from highly fast-paced work, such as working on a fast assembly line; no supervising other people's safety, nor operating fast moving or dangerous machinery, nor constant interactions with the public such as when working as a receptionist in a heavily trafficked office, better off working with objects than people.

   * * *

      6. The claimant is unable to perform any past relevant work.

      * * *

      7. The claimant was born [in] 1978 and was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

      8. The claimant has a limited education.

      9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

      10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

      * * *

      11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2001, through the date of this decision.

AR 934-47 (citations to the code of regulations omitted).

      Plaintiff did not file a written exception to the ALJ's decision, and the Appeals Council did not exercise its discretion to assume jurisdiction. Accordingly, the ALJ's decision became the final decision of the Commissioner on October 19, 2021. *See* 20 C.F.R. §§ 404.984, 416.1484; AR 930. Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## Analysis

      Plaintiff argues that the ALJ improperly discounted her subjective symptom testimony without providing clear and convincing reasons for doing so; she seeks remand for immediate payment of benefits. *See* ECF No. 13. I agree that the ALJ committed reversable error, but I find that additional proceedings are necessary to assess outstanding factual questions.

**A. Subjective Symptom Testimony**

      In the Ninth Circuit, courts follow a "two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th

Cir. 2017). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). If the claimant meets this requirement, the ALJ can reject her symptom testimony only by offering specific, clear, and convincing reasons for doing so. *Id.* "This is not an easy requirement to meet: the clear and convincing standard is the most demanding required in Social Security cases." *Id*. The ALJ's reasons must also be supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff provided written symptom testimony in her "function report," dated December 1, 2012, AR 296-302, and testified at a hearing in December 2020, AR 971-91. In his RFC analysis, the ALJ summarized her 2012 function report testimony:

> In her Function Report, the claimant alleged problems standing, sitting, walking, bending, and lifting. She described obsessive thoughts, depression, and anxiety. According to the claimant, she has issues being around people . . . . She described caring for her eleven-year-old son, which included driving him to school, preparing his meals, and washing his laundry. The claimant wrote that she could cook simple meals, clean, wash dishes, and shop for groceries. The claimant described visiting her mother twice per week.

AR 938 (citing AR 296-302). The ALJ also noted that at the 2020 hearing plaintiff testified to difficulty using her hands, frequent headaches, insomnia, panic attacks, napping during the day, and needing a break after walking fifteen steps. AR 938 (citing AR 971-91).

As an initial matter, the ALJ's truncated summary of plaintiff's testimony—in particular, her 2020 hearing testimony—does not adequately represent her allegations. At her hearing, plaintiff also testified that she uses a cane to walk, that she has worn a neck brace since shortly before her cervical fusion surgery in 2019, and that her surgery did not alleviate her neck problems. AR 971-72. She remains unable to turn her head to either side without experiencing a "grind[ing]" sensation, she "drop[s] things constantly," and she has difficulty writing because of pain, numbness, and tingling in her upper extremities. AR 974-78, 980. She stated that her nineteen-year-old son moved from Oregon to care for her and help with "everything," including combing her hair, getting dressed, shopping, cooking, cleaning the house, and driving. AR 975-

77. She indicated that she needs a knee replacement and that numbness, tingling, and pain in her feet and knees have made it impossible to cook for herself or drive since 2016. AR 976-77. She spends all day sitting on her bed or recliner couch. AR 981. Although she occasionally tries to go for a walk, she can only make it about fifteen steps before needing a break. AR 981. She testified that when she tries to do something on her feet, the pain in her spine and knees requires her to take long and frequent breaks. AR 988-89.

As for her mental impairments, plaintiff testified that she has been diagnosed with insomnia, panic attacks, obsessive compulsive disorder, and bipolar disorder. AR 982. She receives treatment for these disorders, but her medications are only moderately helpful. AR 982-84. She still has panic attacks, manic episodes, racing thoughts, and anxiety, which in turn affect her sleep. AR 985. She gets approximately three hours of sleep each night and takes frequent naps during the day. AR 982-83. Because of her racing thoughts, she has trouble concentrating and focusing. AR 987.

At step two, the ALJ found that plaintiff had lumbar disc disease status post discectomy, Kienbock's disease, right radial styloidectomy, and scapho-capitate intracarpal fusion with distal radius bone graph, status post right finger fracture, anxiety disorder, mood disorder, and somatic symptom disorder. AR 935.[1] The ALJ then found that plaintiff retained the following residual functional capacity ("RFC"):

> "light work . . . except walk a total of 2 hours per day, stand a total of 4 hours per day, reaching and push/pull are occasionally; handling, fingering, feeling and use of feet frequently; all postural activities occasionally, except balance frequently and no climbing ladders or scaffolds; unprotected heights never; humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme temperatures, and vibrations occasionally; moving machinery and operating a motor vehicle frequently, noise moderate (office);

---

[1] The ALJ fails—at either step two or three—to acknowledge plaintiff's cervical spine disc disorder, schizoaffective disorder, or severe degenerative joint disease right knee. *See* AR 935-36. In the RFC, the ALJ includes limitations stemming from plaintiff's cervical spine impairments and briefly notes her schizoaffective disorder, but he does not mention her right knee disorder. *See* AR 940-42. Plaintiff provided substantial evidence of all three impairments, and neither the ALJ nor Commissioner provides any explanation for their absence. Although plaintiff does not argue that these omissions warrant remand, the ALJ's failure to consider all her medically determinable impairments supports the argument that he improperly discredited her symptom testimony.

>capable of object-oriented, routine, habituated, work in a moderately complex setting; restricted from highly fast-paced work, such as working on a fast assembly line; no supervising other people's safety, nor operating fast moving or dangerous machinery, nor constant interactions with the public such as when working as a receptionist in a heavily trafficked office, better off working with objects than people.

AR 937.[2] He determined these limits in part by finding that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 938. Because he also found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," AR 938, he was required to offer specific, clear, and convincing reasons for discounting her testimony.

Outside his discussion of objective medical evidence, the ALJ offered two reasons for discounting plaintiff's testimony. First, he stated that her activities of daily living are "inconsistent with her allegations of total disability because they show that [she] can do work-related activities consistent with the residual functional capacity." AR 938. Second, he noted that she "worked after the alleged onset date, which is inconsistent with her allegations that her impairments precluded all work activity." AR 938. Neither reason satisfies the clear and convincing standard.

The ALJ's reliance on plaintiff's daily activities is problematic for two reasons: first, it overlooks variation in the severity of plaintiff's impairments over time; and second, the activities are insufficient to contradict plaintiff's symptom testimony. Relying solely on plaintiff's 2012 function report, the ALJ stated that plaintiff could "could drive her son to school, cook his meals, and wash his laundry." AR 938; *see* AR 296-302. He explained that "these types of tasks are inconsistent with allegations of total disability because they show that the claimant can do work-related activities consistent with the residual functional capacity." AR 938. Although he repeatedly refers in vague terms to plaintiff's activities throughout the remainder of the decision,

---

[2] "Occasionally" and "frequently" are terms of art under the Social Security regulations: occasionally means "very little up to one-third of the time"; frequently means "from one-third to two-thirds of the time." SSR 83-14, 1983 WL 31254, at *2 (1983).

7

1 he does not provide any additional explanation.

2       In a subsequent application for SSI—consolidated with the instant claim—plaintiff
3 indicated that her condition had materially worsened by December 2017, AR 1318; and, in an
4 August 2019 disability-related-update form, she stated that her condition had further degraded,
5 AR 1340. She described "constant severe pain" in her spine, neck, arms, and legs; pervasive
6 numbness in her arms and legs; constant headaches; and feeling like she was being electrocuted.
7 AR 1340. As for her mental impairments, she added that her depression and anxiety had
8 worsened significantly and that she was now experiencing auditory hallucinations. AR 1340.
9 These allegations are broadly supported by the objective medical evidence. *See infra*, page 9-10.
10 Her 2020 hearing testimony also reflects these developments: she testified that she could no
11 longer drive, walk for more than fifteen steps, stand for prolonged periods without falling, or do
12 almost any household chores or personal tasks without assistance. AR 974-81. Rather than
13 caring for her young son, as she had done in 2012, she testified that her then nineteen-year-old
14 son had moved back in with her so that he could care for her. AR 975-77.

15       The ALJ ignores these developments. He fails to explain how activities plaintiff
16 performed in 2012 contradicted testimony about her symptoms in 2020. Absent any such
17 explanation, plaintiff's activities of daily living do not provide a basis for discrediting the entirety
18 of her symptom testimony. *See Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021) (holding
19 that the ALJ "erred by disregarding *all* of [the claimant's] testimony, including the portion about
20 his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-
21 period testimony").

22       Moreover, plaintiff's activities in 2012 were not so extensive as to contradict her symptom
23 testimony for any period. "Disability claimants should not be penalized for attempting to lead
24 normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
25 1998). A claimant's daily activities should only bear on their credibility where the level of
26 activity is inconsistent with the claimed limitations. *Id*. Although plaintiff stated in her 2012
27 function report that she was able to do occasional household chores and drive her son to and from
28 school, she also noted that she had "to tak[e] many breaks due to [her] chronic back/neck pain,"

and that she would otherwise "just wait around for bed time because [she was] in so much pain constantly." AR 297. She included that her partner "help[ed] [her] with most all daily activities," including taking care of her son, cooking, cleaning, and working. AR 297. There is no discrepancy between these activities and her symptom testimony from either 2012 or 2020, such as that she needs frequent breaks when attempting to "stand, sit, walk, bend, lift, or hold any positions for very long." AR 296; *see also* AR 981, 988 (testimony from 2020 hearing); *cf. Reddick*, 157 F.3d at 722 (finding the plaintiff's pain testimony consistent with her daily activities because they were "sporadic and punctuated with rest"). As discussed *infra*, part B, this limitation is potentially dispositive as to her disability status.

The ALJ's second reason—that plaintiff "worked after the alleged onset date," AR 938—is also insufficient. The record shows that plaintiff attempted to work as a nursing aide between 2005 and 2009. AR 289. However, she made less than $2,400 each year, a figure that the ALJ found too low to constitute substantial gainful activity. AR 935. Apart from noting that plaintiff performed such work, the decision provides no details regarding the nature, frequency, or demands of the work. *See* AR 938. Moreover, like with her activities of daily living, he fails to explain how insubstantial work ending in 2009 undercuts her allegations of disability for the subsequent thirteen years. In the absence of any particularity or explanation, the mere fact that plaintiff held a job—one that did not amount to substantial gainful activity—is not a clear and convincing reason to reject her testimony. *See Reddick*, 157 F.3d at 722-23, 722 n.1 (rejecting the ALJ's reliance on plaintiff's work experience to discredit her testimony, because the ALJ had failed to "fully account[] for the context of materials or all parts of the testimony and [work] reports" when he omitted mention that she merely did "odd jobs 20 minutes one time a week"); *Berry v. United States*, 312 U.S. 450, 455 (1941) ("It was not necessary that petitioner be bed-ridden, wholly helpless, or that he should abandon every possible effort to work in order for the jury to find that he was totally and permanently disabled.").

The Commissioner argues that the ALJ's findings are supported by the medical evidence. ECF No. 17 at 5-9. Importantly, ALJ's "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v.*

9

*Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect our symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Thus, the absence of legitimate reasons to discount plaintiff's testimony outside of any discussion of the objective medical evidence is an error that independently warrants remand.

Nevertheless, the ALJ's discussion of the objective medical evidence is also inadequate, particularly in its meagre consideration of medical records after 2014. The ALJ includes a single paragraph referring to treatment that plaintiff received for her physical conditions in 2015 or later, most of which supports her allegations. *See* 940. His discussion highlights cursory physical examination findings, such as a March 2019 finding of "normal toe and heel walking, normal strength and normal muscle tone with slightly reduced strength in the upper and lower right extremity, and restricted range of motion in the spine." AR 940 (citing AR 1456-59). He relies heavily on these findings, ignoring considerable evidence in support of plaintiff's allegations, to support the minimal limitations assessed in the RFC. *See, e.g.*, AR 943 (crediting opinion evidence as "consistent with unremarkable physical examination findings, such as normal gait, range of motion, and strength").

Contrary to the ALJ's characterization, plaintiff's medical records overwhelmingly support her allegations. In 2018, a physician diagnosed palpable muscle spasms in her thoracic and cervical spines. AR 1428-34. A January 2019 MRI showed severe foraminal narrowing at C3-4 through C6-C7 and reversal of the normal curvature of her cervical spine. AR 1447-49, 1456-59. At the March 2019 physical exam cited by the ALJ, she was found to have "unsteady" tandem walking on both sides, tenderness in her lumbar and cervical spine, and severe range of motion limitations in her spine: "25% of normal" extension in her lumbar spine, "less than 75% of normal" extension in her cervical spine, and "less than 50% of normal rotation to the right" in her cervical spine. *See* AR 1458-59. After a nerve conduction study, plaintiff was diagnosed with bilateral arm radiculopathy stemming from degenerative disc disease in her cervical spine from C4 through C7. *See* AR 1430 & 1717. Her cervical impairments were sufficiently severe to

warrant surgery—"cervical vertebrectomies with anterior cervical fusion"—in March 2019. AR 940, 1456-59. Plaintiff reported that her surgery did not help, and physical therapy treatment notes from the subsequent several months do not show significant improvement. *See* AR 1504-24. In June 2020, plaintiff received x-rays for progressively increasing pain in her right knee; the physician diagnosed "[s]evere degenerative joint disease" and recommended a total knee arthroplasty (or replacement). AR 1582-83.[3] Her mental impairment allegations are also well-supported by extensive treatment records, showing consistently severe symptoms of major depressive disorder, generalized anxiety disorder, panic disorder, and—since at least early 2020—schizophrenia. *See* AR 1720-56. Thus, the ALJ's contention that the medical record does not contain "objective evidence . . . [of] debilitating limitations," AR 940, is not supported by substantial evidence.

The ALJ's failure to provide clear and convincing reasons for discounting plaintiff's symptom testimony was not harmless. He assessed several limitations in the RFC that could not be sustained if plaintiff's testimony was properly credited. For instance, he found that plaintiff can "operat[e] a motor vehicle frequently" and stand or walk in some combination for six hours per day. AR 937. These limitations fly in the face of plaintiff's 2020 testimony that she cannot walk for more than fifteen steps without taking a break and that she has been completely unable to drive (and without a driver's license) since 2016. *See* AR 975-77. They also appear to contradict plaintiff's 2012 testimony that she had "to tak[e] many breaks due to [her] chronic back/neck pain." AR 297. Crediting plaintiff's symptom testimony would have changed the ALJ's opinion.

**B. Remedy**

Plaintiff argues that the ALJ's improper refusal to credit her symptom testimony warrants

---

[3] Neither the ALJ nor any of the agency consultants appears to have acknowledged her knee impairments, even though she filed multiple disability-related-development forms that mentioned her need for a knee replacement, and even though she discussed both her use of a cane and her knee impairments at the 2020 hearing. *See* AR 935-40 (noting, in the ALJ decision, that "the record does not show evidence of abnormality of a major joint in any extremity"); AR 971 & 976 (testifying, in plaintiff's hearing, that she had been using a cane for eight months and needed a knee replacement surgery, but that her knee doctor had retired); AR 1379, 1393 (reporting by plaintiff in disability and medical treatment updates that she needs her right knee replaced).

immediate payment of benefits. ECF No. 13 at 18. Typically, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). However, "courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.'" *Garrison*, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)) (emphasis omitted). In *Varney v. Sec'y of Health & Human Servs.*, the Ninth Circuit held: "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true." 859 F.2d 1396, 1401 (9th Cir. 1988) ("*Varney II*") (citations omitted). This "credit-as-true rule is designed to achieve fairness and efficiency," *Garrison*, 759 F. 3d at 1019, and to "ensure that pain testimony will be carefully assessed and its importance recognized," *Varney II*, 859 F.2d at 1398.

For this court to depart from the ordinary remand rule and award benefits under the credit-as-true rule, three requirements must be met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. However, even where all three requirements are satisfied, the court retains flexibility in determining the appropriate remedy. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). In particular, the court may remand for "further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* (quoting *Garrison*, 759 F.3d at 1021).

Plaintiff filed her applications nearly nine years ago. Since that time, two ALJs have issued adverse decisions, both deficient in some respect. The first ALJ found that plaintiff was not disabled by identifying approximately 10,000 jobs in the national economy that plaintiff could

perform—a figure that this court determined to be too low to support a finding of non-disability. AR 1091-93. On remand, the ALJ found that plaintiff could perform a more significant number of jobs by assessing an RFC that was less restrictive than the prior RFC, even though plaintiff had provided considerable evidence that her conditions had materially worsened. *Compare* AR 24 (limiting plaintiff to "lifting ['and carrying'] 20 pounds occasionally and 10 pounds frequently; . . . occasional handling ['and fingering'] with the right upper extremity"), *with* AR 937 (assessing no limits on lifting or carrying and limiting plaintiff to handling and fingering frequently). As explained *supra*, the reasons he provided in support of this RFC are illogical and unsupported by substantial evidence. Thus, the second requirement is satisfied.

The first and third requirements are also satisfied, at least with respect to the last several years. At a 2021 hearing, plaintiff's attorney asked the vocational expert whether a hypothetical person with the limitations in plaintiff's RFC could perform any jobs if that person also needed ten-minute breaks every hour. AR 1002-3. The VE responded that such a person could not perform any jobs at a competitive level. AR 1003.[4] The hypothetical posed by plaintiff's attorney is supported by plaintiff's testimony—from both 2012 and 2020—that she could not sustain any position for long without experiencing significant pain and therefore requires frequent breaks. AR 237, 988-89. It is also supported by 2014 testimony from her fiancé and 2019 testimony from her sister—both of whom served as her caretaker at various points—as well as by the 2013 testimony of a state agency medical consultant who found that plaintiff could only sit or stand for two hours in an eight-hour day. *See* AR 81 (state agency medical consultant); AR 317 (testimony from plaintiff's fiancé that she "can't stand or sit in same position for very long" and can't cook for herself unless it takes less than fifteen minutes); AR 1313 (testimony from plaintiff's sister that she can walk only 130-140 feet before needing a twenty-minute break). The VE's testimony is sufficient to show that, if plaintiff's testimony had been credited, she would have been found disabled. *See Garrison*, 759 F. 3d at 1020 (holding that VE testimony that a hypothetical person with "the RFC that the claimant would possess were the relevant opinion or

---

[4] At the 2020 hearing, the VE provided the same response to this question, except with the limitations ascribed to the plaintiff in the earlier ALJ decision. AR 967-68.

1  testimony taken as true" provided a sufficient basis to find the claimant "disabled without
2  remanding for further proceedings").

3  Moreover, the Ninth Circuit has stressed that "applicants for disability benefits often
4  suffer from painful and debilitating conditions, as well as severe economic hardship." *Varney II*,
5  859 F.2d at 1399. Plaintiff has suffered from severe physical and mental impairments for more
6  than two decades and has not held any job—even one that does not meet the substantial gainful
7  activity level—for nearly fifteen years. She has experienced housing instability and relies on her
8  adult son and sister for her care. To delay the payment of benefits by requiring a third round of
9  administrative proceedings would risk causing "the applicant further damage—financial, medical,
10 and emotional. Such damage can never be remedied." *Id.*

11 Nevertheless, the record leaves some doubt as to precisely when plaintiff became disabled.
12 Plaintiff does not challenge the ALJ's characterization of her medical records as showing
13 "unremarkable physical examination findings" in 2001 and 2002, minimal "treatment for [her]
14 back pain" between 2002 and 2008, or "limited treatment of [her] mental symptoms until late
15 2008." AR 939, 941. In a series of filings between 2019 and 2020, she reported worsening
16 physical and mental impairments that strongly support a finding that she was disabled by the time
17 of her 2020 hearing. AR 1300-54, 1379-81, 1391-92. However, other than her 2019 neck
18 surgery, she does not identify specific inflection points in the deterioration of her health. ECF
19 No. 13 at 15. Thus, while payment of benefits appears warranted as to her Title XVI claim, the
20 undersigned cannot determine either the proper date from which to calculate benefits for that
21 claim or whether plaintiff is entitled to payment of benefits on her Title II claim. *Cf. Wellington
22 v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) ("A claimant can qualify for [Title II] benefits only
23 if her disability begins by her date last insured . . . . In contrast, a claimant is eligible for SSI once
24 she becomes disabled, but she cannot receive benefits for any period before her application
25 date.").

26 In such cases, where "the medical evidence is not definite concerning the onset date and
27 medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon
28 the services of a medical advisor and to obtain all evidence which is available to make the

determination." *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). Accordingly, the matter must be remanded for further proceedings to allow for proper consideration of when plaintiff's impairments became sufficiently severe to render her disabled. To assist in this process, the ALJ is instructed to call a medical advisor and to obtain all evidence necessary to make the determination.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 13, is granted.
2. The Commissioner's cross-motion for summary judgment, ECF No. 17, is denied.
3. The matter is remanded for further proceedings consistent with this order.
4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated:    March 31, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE